IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **FRANK BRATCHER**, § § Plaintiff, § § v. § Civil Action No. **3:23-cv-838-L** § **AMERIHOME MORTGAGE** § **COMPANY, LLC, its successors and/or** § **assigns,** § Defendant. § | |

## AMENDED MEMORANDUM OPINION AND ORDER

On November 27, 2024, the court issued a Memorandum Opinion and Order (Doc. 17). After the issuance of the Memorandum Opinion and Order, the court made several stylistic changes. Nothing of substance has changed from the original Memorandum Opinion and Order on November 27, 2024. In light of the stylistic changes, the court **vacates** its earlier issued Memorandum Opinion and Order (Doc. 17) and **substitutes** this Amended Memorandum Opinion and Order in its place.

On September 30, 2024, the court administratively closed this action. To rule on two pending motions, the court **orders** the clerk of court to **reopen** it.

Before the court is Plaintiff Frank Bratcher's ("Plaintiff" or "Mr. Bratcher") Motion for Leave to File an Amended Complaint ("Motion for Leave") (Doc. 14), filed on September 16, 2024; Defendant Amerihome Mortgage Company LLC's ("Defendant" or "Amerihome") Motion for Summary Judgment ("Defendant's Motion for Summary Judgment") (Doc. 12), filed on August 5, 2024; and Plaintiff's Original Verified Petition ("Petition") (Doc. 1-1). For the reasons herein explained, the court **denies** Plaintiff's Motion for Leave (Doc. 14), **grants** Defendant's Motion for Summary Judgment (Doc. 12), and **dismisses** this action **with**

**Amended Memorandum Opinion and Order – Page 1**

**prejudice**. Plaintiff did not file a response, and the time to do so has passed; however, he initially filed a verified petition in state court.

I.    **Factual and Procedural Background**

On March 3, 2023, Mr. Bratcher filed his Petition in the 413th Judicial District Court of Johnson County, Texas (Doc. 1-1), and Defendant filed its Notice of Removal (Doc. 1) to federal court on April 20, 2023, pursuant to federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff filed this action against Defendant Amerihome and made claims for (1) Breach of Contract, (2) violations of the Texas Debt Collection Act (TDCA), (3) violations of the Real Estate Settlement Procedure Act (RESPA) and Regulation X of the Code of Federal Regulations and The Coronavirus Aid, Relief, and Economic Security Act (CARES), (4) Common Law Fraud, and (5) Damages. Defendant denies liability for these claims.

On June 9, 2017, Mr. Bratcher and Tricia Romeign, both unmarried, took out a loan with Great Western Financial Services, Inc. in the amount of $375,250 (the "Note") to purchase the property in Godley, Texas (Doc. 13 at 1). Plaintiff made all monthly payments due on time until approximately March 2020 (Doc. 1-1 at 4). After Plaintiff fell behind on the loan, Defendant granted him a payment forbearance from April 1, 2020, to June 30, 2020 (Doc. 13 at 2). After that period, Defendant gave Plaintiff an additional payment forbearance through September 30, 2020. Defendant extended the forbearance again until March 31, 2021. *Id.* Again, for the fourth time, Defendant granted a forbearance, pausing all payments until June 30, 2021, and a fifth and final time on September 30, 2021. *Id.* During these extensions, Mr. Bratcher was not required to make a payment for eighteen months. *Id.*

In November 2021, Plaintiff was provided a Flex Modification, which required him to complete three monthly trial payments of $2,856.63 from January 1, 2022, and he did so

successfully (Doc 1-1 at 4). Plaintiff's new monthly payment was to be $2,960.70, which included principal and interest and monthly escrow (Doc. 13 at 2). Plaintiff contacted Defendant to inform it that the payment was not what the parties agreed to and because of confusion regarding the actual amount of the payment, he made a payment of $2,868.31 (Doc. 1-1 at 5). Defendant offered Plaintiff two loan modifications, both of which he declined to accept (Doc. 13 at 3). Plaintiff made several attempts in good faith to make his payments, but he failed to make the payments in full (Doc. 1-1 at 6). On November 1, 2022, Defendant sent Plaintiff a Notice of Default via certified mail and advised him that he could seek counseling through the Department of Housing and Urban Development (Doc. 13 at 3).

Ordinarily, the court would address Defendant's Motion for Summary Judgment first; however, the court will address the Motion for Leave first because Plaintiff contends that it serves as a response to Defendant's Motion for Summary Judgment, despite its untimely filing. For the reasons set forth in the following section, the court **denies** the Motion for Leave.

## II.   Discussion

### A.  Plaintiff's Motion for Leave

Plaintiff seeks to amend his complaint by way of Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"). Before the court can modify a scheduling order under Rule 15(a), the movant must first show "good cause" for failure to meet the scheduling order deadline under Federal Rule of Civil Procedure 16(b). *S&W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003) ("Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably be met despite the diligence of the party

needing the extension." *S &W Enters.*, 315 F.3d at 535 (citation omitted). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id.* at 536. In deciding whether to allow an untimely amendment, the court considers "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (internal quotation marks, brackets, and citations omitted). Definitionally, carelessness, inattention to detail, lack of planning, and negligence are not synonymous with diligence.

In support of his Motion for Leave, Plaintiff states the following:

> 11. Plaintiff hereby seeks leave to amend his Complaint to add at least one additional claim or cause of action against the Defendant that was inadvertently omitted from his state court pleading. A true and correct copy of the Plaintiff's First Amended Complaint for which leave to amend is being sought hereunder and which was previously filed as [Dkt.14] is attached hereto marked Exhibit "A" for all purposes.
> 12. No party will suffer any material harm or prejudice by the granting of this motion as no other pertinent deadlines are affected by the granting of the same.
> 13. This motion is not brought for purposes of delay or harassment, but rather so that justice may be served.

Pl's. Mot. ¶¶ 11-13.

The court now addresses each of the four factors as necessary. With respect to the explanation for failure to timely move for leave to amend, Plaintiff did not address each of the four factors, and this failure requires the court to thread through the Petition and apply Plaintiff's general and incomplete assertions regarding the relevant factors. In his Motion for Leave, Plaintiff simply states that he wants to add at least one additional claim that he "inadvertently" omitted from the Petition and that he thought the scheduling deadline would be extended. The court is not impressed by these reasons, as it is the law that determines whether a modification is

warranted, not the parties. The court does not understand why Plaintiff would believe that the court would automatically extend the deadline.

The parties first moved to amend the scheduling order on February 21, 2024 (Doc. 10). In their Joint Motion, Plaintiff informed the court that they were in settlement discussions and requested that an extension be granted of the *existing deadlines*. The court first amended the Scheduling Order on March 11, 2024 (Doc. 11). The parties only requested an extension of the *existing deadlines*; they did not request the court to revive any expired deadlines. The deadline to amend pleadings and add parties expired September 28, 2023, almost one year before Plaintiff filed his Motion for Leave. Moreover, their proposed amended scheduling order only requested that the dates for the trial, dispositive motions, and discovery be extended (Doc. 10-1). The court extended the discovery deadline to January 3, 2025; the deadline to file a motion for summary judgment to January 17, 2025; and the trial date to June 2, 2025.

In the parties' Joint Status Report (Doc. 5), they agreed to a deadline of July 31, 2023, to amend pleadings and add new parties. The court, in its original Scheduling Order (Doc. 6 ¶ 11), gave the parties until September 28, 2023, to amend pleadings, which was *two* months more than they requested. Finally, the court does not believe that Plaintiff has shown diligence in meeting this deadline. Accordingly, the explanation given by Plaintiff is not well-taken, and this factor weighs against granting the Motion for Leave.

The court now addresses the second factor, which is the importance of the amendment. Plaintiff informs the court that he desires to bring a statutory fraud claim because, according to him, Defendant breached a real estate contract by making a false representation of fact. He does not explain the importance of this "additional claim" that he recently "found." Doc. 14 ¶ 18. He provides nothing for the court to determine why this is important to this action, how this is

different in substance from his common law fraud claim, or why he could not have included any "additional claim" initially. Further, as discussed later in this opinion, a statutory fraud claim would be barred by the statute of frauds because it is based on a loan agreement over $50,000, and the alleged promise made to Plaintiff regarding the loan modification was an oral promise.

Accordingly, permitting Plaintiff to add a statutory fraud claim serves no purpose and would be futile.

Finally, the court addresses the third and fourth factors of the test—potential prejudice and the availability of a continuance to cure such prejudice. Plaintiff contends that the Motion for Leave is brought so that justice may be served and further states that no party will suffer any material harm or prejudice by granting it because no other pertinent deadlines will be affected. The court recognizes that the other deadlines may not be affected by granting Plaintiff's Motion for Leave, but the court has the power to control its docket "by refusing to give ineffective litigants a second chance to develop their case." *Reliance Ins. Co. v. Louisiana Land & Expl.*, 110 F.3d 253, 258 (5th Cir. 1997) (citation omitted). The court has determined, for the reasons herein explained, that allowing Plaintiff to add this claim would be futile. There is a strong potential prejudice in allowing the amendment, and the prejudice is not *de minimis* because the claim is barred as a matter of law. Further, adding the claim would not cure the prejudice because allowing Plaintiff to add any additional claims would unnecessarily reset the clock as it relates to this addition, especially since Plaintiff did not adequately respond to Defendant's Motion for Summary Judgment.

Collectively, all four of the factors in *S&W Enterprises* weigh against establishing good cause, and, therefore, the Motion for Leave will be **denied**.

### B. Motion for Summary Judgment Standard

Plaintiff purports to substitute his response to Defendant's Motion for Summary Judgment with his amended complaint. Further, he says that his motion makes the Motion for Summary Judgment moot; this is incorrect because the court did not grant the Motion for Leave for the reasons herein stated.

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential

elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Defendant filed no response to the Motion for Summary Judgment. This failure, of course, does not permit the court to enter a "default" summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). A court, however, is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Id*. Normally, "[a] summary

judgment nonmovant who does not respond to the motion is relegated to [its] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).

In this instance, Plaintiff's Petition, the operative or live pleading, is verified and, therefore, can be considered by the court in ruling on the Motion for Summary Judgment to the extent that the statements stated in the Petition constitute evidence allowed by Federal Rule of Civil Procedure 56.

### C. Defendant's Motion for Summary Judgment

#### 1. Breach of Contract

In his Petition, Plaintiff contends that Defendant materially breached the Deed of Trust because he was not provided with the required Notice of Default and an Opportunity to Cure. He also states that he had no information as to the exact amount necessary to cure the default.

Because Plaintiff's Petition is not a model of pellucid draftsmanship, the court sets forth the relevant allegations of the Petition:

> 29. The acts, conduct, or omissions of the Defendant as described herein, supra, also constitute a material breach of the Deed of Trust and a violation of the Texas Property Code, and a failure of condition precedent as to its purported acceleration of the Plaintiffs Loan and posting of the Plaintiff s homestead property for foreclosure sale, and which material breach is the proximate cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.
>
> 30. Specifically, Defendant was required under both the Deed of Trust and the Texas Property Code to provide Plaintiff with a written Notice of Default and Opportunity to Cure notice as expressly required under paragraph 22 of the Deed of Trust and TEX. PROP. CODE §51.002(d), and failed to provide such notice and the 30-day period within which to cure the default before accelerating the Loan and posting the property for foreclosure sale, even after it had received and accepted numerous payments throughout 2022, and such failure to provide said notice constitutes a material breach of the Deed of Trust and a failure of condition

>precedent that must occur before the power of sale provision in the Deed of Trust can be exercised, and is a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.
>
>31. Further, since Plaintiff was not provided with the required notice of default and opportunity to cure notice, Plaintiff has also been denied his right to reinstate after acceleration as set forth in paragraph 19 of the Deed of Trust since he has no information as to the exact amount to cure the default (reinstate), which is another separate and distinct breach of the Deed of Trust contract, and a producing cause of the actual damages sustained and incurred by Plaintiff in excess of the minimum jurisdictional limits of this Court.

Pl.'s Pet. ¶¶ 29-31.

Defendant counters and contends that Plaintiff cannot maintain a contract claim because he materially breached the Note and Deed of Trust and was in default. The court agrees with Defendant that a party to a contract who is in default himself cannot maintain a suit for its breach. *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990). Defendant adds that this rule was adopted by the Fifth Circuit in *Villarreal,* in which the Fifth Circuit held Ms. Villarreal was not able to pursue a breach of contract claim because Wells Fargo provided facts that showed that she was in default, and she did not refute the evidence against her. *Villarreal v. Wells Fargo Bank, NA.*, 814 F.3d 763, 767 (5th Cir. 2016). In this case, Defendant provided evidence that it sent a letter to Plaintiff on June 8, 2020, explaining the terms of the forbearance and that failure to pay would result in default. Plaintiff did not abide by the terms of the Note and Deed, and this failure constitutes a material breach of the Note and Deed.

The court agrees. Defendant provided documented evidence of the letter mailed to Plaintiff on November 1, 2022, stating the default amount of $74,422.36 owed, and it provided him information on how to avoid foreclosure. Plaintiff has presented no competent summary judgment evidence to the contrary. Moreover, once Plaintiff did not respond to the Motion for Summary Judgment, the court could consider Defendant's facts as undisputed, except to the

extent that Plaintiff's Petition contradicts what Defendant has established, which it does not. Plaintiff had an opportunity to challenge the competent, documented evidence presented by Defendant by filing a response; however, he failed to file one. Because Plaintiff was in default, he cannot maintain a claim for breach of contract. Accordingly, the court concludes that no genuine dispute of material fact exists regarding Defendant's alleged breach, and Defendant is entitled to judgment as a matter of law on this claim.

    2.   The TDCA

In his Petition, Plaintiff contends that Defendant violated sections 392.301(a)(8), 392.304(a)(8), and 392.3(a)(19) of the TDCA, which, respectively, prohibit debt collectors from (1) threatening to take an action prohibited by law; (2) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer's debt status in a judicial or governmental proceeding; and (3) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer. Plaintiff contends that Defendant violated these provisions when it failed, neglected, or refused to provide him with a Notice of Default and an Opportunity to Cure notice as required prior to the acceleration and posting of his homestead property for foreclosure sale. Plaintiff further contends that Defendant did not provide him with details of the amount due and owing and unilaterally increased the monthly payments every time any loss mitigation assistance was offered. Plaintiff contends that each of these constitutes an intentional and/or knowing misrepresentation of the character, amount, or extent of the debt to be collected in violation of the TDCA.

In its Motion, Defendant argues that these claims fail as a matter of law because the evidence establishes that it sent all required foreclosure notices to Plaintiff. On November 1, 2022, Defendant mailed Plaintiff a Notice of Default via certified mail. Def.'s Ex. A-16.

Included in the Notice of Default was the amount owed and the date of delinquency, and Defendant warned that the Note would be accelerated if Plaintiff failed to cure his default. Further, it adds that because Plaintiff cannot offer any rebuttal evidence, it is entitled to summary judgment on this issue. Defendant is correct.

The TDCA provides a state law remedy for wrongful debt collection actions. *Cushman v. GC Services, L.P.*, 657 F. Supp. 2d 834, 840 (S.D. Tex. 2009). To support a claim or raise a genuine issue of material fact under the TDCA, Plaintiff must establish each of the following:

> (1) the debt is a consumer debt; (2) the defendant is a 'debt collector' within the meaning of the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act.

*Putty v. Fed. Nat'l Mortg. Ass'n,* No. 3:16-CV-2562-D, 2017 WL 5070423, at *3 (N.D. Tex. Nov. 3, 2017) (quotation omitted), *aff'd,* 736 F. App'x 484 (5th Cir. 2018).

It is undisputed that the debt at issue is a consumer debt and that Amerihome is a debt collector within the meaning of TDCA. Plaintiff does, however, state that Defendant committed a wrongful act in violation of the TDCA; the wrongful act was committed against Plaintiff, and Plaintiff was injured as a result of Defendant's wrongful act. To support his claims, Plaintiff has provided no evidence to rebut the Notice of Default, which refutes his contention that Amerihome violated the TDCA. Further, Plaintiff has provided no evidence to show how Defendant affirmatively misrepresented any statement, threatened to take a prohibited action, or used deceptive means to obtain information concerning Mr. Bratcher.

Plaintiff has not provided any evidence to the contrary that would support his claim or refute the evidence presented by Defendant. Accordingly, the court concludes that no genuine

dispute of material fact exists, and Defendant is entitled to summary judgment on Plaintiff's TCDA claim.

        3. <u>RESPA and Regulation X of the Code of Federal Regulations and The CARES Act</u>

Plaintiff asserts a claim under 12 U.S.C. § 2605(f) of RESPA, which provides that a party who fails to comply may be liable to the borrower for providing damages and costs. Plaintiff contends that he is entitled to damages because his loan is a "federally related mortgage loan" under 12 C.F.R. §1026.41(e)(4), and Defendant is subject to the regulations and does not qualify for the exception for a "qualified lender" or "small servicer" as defined by 12 C.F.R. §617.700. More specifically, Plaintiff states that he was told by a representative of Defendant that after the trial payment period ended, he would get help lowering his monthly payments. He states that Defendant did not lower the payments but instead raised them.

In its Motion for Summary Judgment, Defendant establishes that it complied with the applicable law in the loan modifications, and to the extent that Plaintiff relies on an alleged oral promise to lower his payments, they are barred by the statute of frauds. Defendant contends that a loan agreement for more than $50,000 is not enforceable unless it is in writing and signed by both parties. *Martins v. BAC Home Loans Servicing, L.P.,* 722 F.3d 249, 256 (5th Cir. 2013) (citing Tex. Bus. & Com. Code § 26.02(b)). Defendant's evidence shows that it never made this promise; instead, it informed Plaintiff that "[a]vailable options may vary depending on investor guidelines and additional eligibility requirements and documentation may be required for these options" (Doc. 13 at 8).

Further, Amerihome argues that Plaintiff does not contend that it "failed to acknowledge receipt of his application, evaluate him for loss mitigation options, provide a determination in writing, or fail to undertake any other duty outlined in RESPA." Doc. 13. It argues that he simply

alleges that his payment should have been lower than it was. Defendant argues that RESPA does not require loss mitigation options; instead, it specifies procedures and timing for reviewing complete loss mitigation applications. *Id.*

The court finds Plaintiff's evidence on this claim insufficient because Plaintiff cites 12 U.S.C. §2605(f) of RESPA, which creates a right of action for damages, but he does not state which provision of RESPA Defendant violated. Citing this section is not sufficient by itself to state a claim upon which relief can be granted because §2605(f) provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower . . . ." The Petition does not state the provision he alleges Defendant violated, but it appears that Plaintiff is attempting to set forth an argument under §2605(e)(1)(A), which requires a loan servicer to "provide a written response" acknowledging receipt of a "qualified written request" from a borrower within five days of receiving the correspondence. Plaintiff's pleadings on this matter are so threadbare that it is difficult for the court to ascertain the alleged RESPA violation, and it is not incumbent upon the court to speculate or guess as to the intended provision of RESPA that Plaintiff intends to use as a basis to support this alleged claim.

As it relates to Defendant's Motion for Summary Judgment, Plaintiff has not provided any competent summary judgment evidence to the contrary that would support his claim or refute the evidence presented by Defendant. Plaintiff has not shown where Defendant agreed in writing to lower his monthly payments; nor has he shown—or raised a genuine dispute of material fact—how Amerihome violated RESPA or the CARES Act. In addition, these alleged promises are inadmissible hearsay. When an out-of-court statement of a declarant is being offered for the truth of the matter asserted, without an exclusion, it is hearsay. Further, even if

the court took the alleged promises as true, there is not sufficient evidence to satisfy any of the exceptions or exclusions to the hearsay rule.

To the extent that he argues that these alleged promises are admissible non-hearsay pursuant to Federal Rule of Civil Procedure 801(d)(2)(D), the court disagrees. Mr. Bratcher fails to present evidence to show that the unidentified persons or persons referred to only by the alleged promises made were employees of Amerihome or that the statements were made by an agent of it. Mr. Bratcher's statements such as he was told "by the representative that the Defendant would work with him to lower his monthly payments" are insufficient, without more, to establish the necessary preliminary facts that would bring the statements within Rule 801(d)(2)(D). *See Davis v. Mobil Oil Exploration & Producing Southeast, Inc.,* 864 F.2d 1171, 1174 (5th Cir. [ ] 1989) (holding that a district court should be presented with sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of Rule 801(d)(2)(D)). Without an exception or exclusion to the hearsay rule, these statements cannot be considered as competent evidence by the court.

Accordingly, the court concludes that no genuine dispute of material fact exists, and Defendant is entitled to summary judgment on these claims.

    4. <u>Common Law Fraud</u>

Plaintiff states that numerous representatives of Amerihome assured him that his modified loan payments would be reduced or lowered, but Amerihome raised the payments, accelerated the loan, and foreclosed on the property, which he states constitutes common law fraud.

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citation omitted).

Defendant raises an affirmative defense and contends that Plaintiff's claim is barred by the statute of frauds because he seeks to obtain the benefit of the bargain he would have obtained if the oral promise were performed (Doc. 13) (citing *Salazar v. BAC Home Loans Servicing, LP*, No. 3:11-CV-1309-L, 2012 WL 995296, at *3 (N.D. Tex. Mar. 23, 2012)); *See also Haase v. Glazner*, 62 S.W.3d 795 (Tex. 2001). Under section 26.01(b)(4), an agreement for the sale of real property must be in writing to be enforceable. *Id.*

The court agrees with Defendant. Sections 26.02(b) and 26.02(c) of the Texas Business and Commerce Code provides:

> **(b)** A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.
> **(c)** The rights and obligations of the parties to an agreement subject to Subsection (b) of this section shall be determined solely from the written loan agreement, and any prior oral agreements between the parties are superseded by and merged into the loan agreement.

Defendant provides evidence of at least three instances that prove it offered Plaintiff modifications in writing or notified Plaintiff of the remaining balance on the loan. *See* Def.'s Ex.'s A-3, A-10 and A-16. Plaintiff does not state the modification amount that the representative orally promised him or the amount that is the basis for this claim; nevertheless, it

is not relevant because the evidence provided shows that the outstanding principal balance was at least $358,575.25, which is well above the $50,000 threshold barred by the statute of frauds. *See* Def.'s Ex. A-12. Further, when Defendant did offer Plaintiff a "Flex" modification, the offer showed the estimated unpaid principal balance as $402,055.73 as of November 2021. Def.'s Ex. A-10. The court is unable to consider oral promises because, as the evidence presented shows, even if Defendant promised to lower the payments orally, the value of the modification would be more than $50,000.

If a party is allowed to enforce a contract that the statute otherwise makes unenforceable, the purpose of the statute of frauds is frustrated. *See Haase,* 462 S.W.3d at 799. A modification to a loan agreement for more than $50,000 is not enforceable, unless it is in writing. *See Martins,* 722 F.3d at 256; *see also Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24,* 866 F.3d 351, 361 (5th Cir. 2017). Plaintiff has not provided any evidence of Defendant confirming in writing that Amerihome would lower his payments. Accordingly, the court concludes that no genuine dispute of material fact exists, and Defendant is entitled to judgment as a matter of law on these claims.

### III.  Conclusion

For the reasons herein explained, the court **concludes** that no genuine dispute of material fact exists to any claims asserted by Plaintiff. Accordingly, the court **grants** Amerihome's Motion for Summary Judgment (Doc. 12), **denies** Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 14), and **dismisses with prejudice** this action. The court will issue a judgment by a separate document as required by Rule 58 of the Federal Rules of Civil Procedure. As all matters have been disposed of in this action, the court **directs** the clerk of court to **close** it.

**It is so ordered** this 10th day of December, 2024.

Sam A. Lindsay
United States District Judge